IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| YASEKA JONES | ) | CASE NO.: |
| 601 West Park Avenue | ) | |
| Apt. 311 | ) | JUDGE: |
| Hubbard, Ohio, 44425 | ) | |
| | ) | COMPLAINT FOR VIOLATIONS OF |
| Plaintiff, | ) | THE FAIR LABOR STANDARDS ACT |
| v. | ) | AND THE OHIO MINIMUM FAIR |
| | ) | WAGE STANDARDS ACT |
| JUST IN TIME STAFFING, INC. | ) | |
| 8200 Tyler Blvd, | ) | |
| Mentor, Ohio, 44060 | ) | (Jury Demand Endorsed Herein) |
| | ) | |
| **Please serve also:** | ) | |
| c/o Michael J. Donato, Statutory | ) | |
| Agent | ) | |
| 8130 Tyler Blvd, | ) | |
| Mentor, Ohio, 44060 | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| KRISTI PRESCIANO | ) | |
| 107 Elizabeth Way, | ) | |
| South Point, Ohio, 45680 | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, Yaseka Jones, by and through undersigned counsel, as her Complaint against

Defendants, states and avers the following:

## PARTIES

1.    Jones is an individual residing in Hubbard, Ohio.

2.    Just In Time Staffing, Inc. ("JIT") is an Ohio Corporation whose principal place of business
      is located in Mentor, Ohio.

3.    At all times referenced herein, Presciano was and/or is a manager or supervisor for JIT.

**PERSONAL JURISDICTION**

4.   Defendants hire citizens of the state of Ohio, contract with companies in Ohio, and own or rent property in Ohio. As such, the exercise of personal jurisdiction over Defendants comports with due process.

5.   Jones performed work in this judicial district and/or was hired out of this district.

6.   This cause of action arose from or relates to the contacts of Defendants with Ohio residents, thereby conferring specific jurisdiction over Defendants.

**SUBJECT MATTER JURISDICTION AND VENUE**

7.   This Court has original subject matter jurisdiction of this case under 28 U.S.C. §§1331 and 1341, inasmuch the matters in controversy are brought pursuant to the FLSA, 29 U.S.C § 215, 216, *et seq*.

8.   This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Jones's state law claims under the Ohio Minimum Fair Wages Standards Act ("OMFWSA") and the Ohio Constitution because those claims derive from a common nucleus of operative facts.

9.   Venue is proper in this District because Defendants do a sizeable portion of their business in this District, and many of the wrongs herein alleged occurred in this District.

**COVERAGE**

10.   At all times referenced herein, JIT formed a single enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r) and formed a single enterprise engaged in commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise at all times hereinafter mentioned had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in

that enterprise had an annual gross volume of sales made or business done of not less than $500,000.00.

11. At all times referenced herein, JIT was a "person" as that term is defined by § 203(a) of Fair Labor Standards Act ("FLSA"), 29 § U.S.C. 215, *et seq.*

12. At all times referenced herein, Presciano was a "person" as that term is defined by § 203(a) of Fair Labor Standards Act ("FLSA"), 29 § U.S.C. 215, *et seq.*

## FACTS

13. JIT provides staffing services to employers throughout Northeast Ohio.

14. Jones is a former employee of JIT.

15. In or around August of 2018, JIT placed Jones as a "packer" with Dillen Products in Middlefield, Ohio ("Dillen").

16. At all times referenced herein, Jones was paid on an hourly basis by JIT.

17. In or around December of 2018, JIT accidently overpaid Jones

18. At all times referenced herein, Jones was paid hourly.

19. Jones' hourly rate fluctuated between $10.00 and $11.00 per hour.

20. Jones's paychecks typically netted between $375.00 and $475.00.

21. At all times referenced herein, Dillen had a right to "permanently" hire Jones from JIT as an at-will employee.

22. Upon information and belief, Dillen's right to "permanently" hire employees staffed by JIT was subject to JIT's approval.

23. At all times referenced herein, Jones was supervised by Presciano and "Chris" (last name unknown) at Dillen.

24. In or around December of 2018, Chris told Jones that Dillen wanted to hire her "permanently" from JIT.

25. On or about December 28, 2018, JIT paid Jones $2,074.00 in error, rather than her usual pay.

26. Believing she had received an end of year or holiday bonus, Jones spent a substantial amount of the $2,074.00 in the days immediately following its deposit.

27. On or about December 31, 2018, JIT reversed the $2,074.00 payment, but could not recover all of it because it had already been spent by Jones.

28. Jones' bank account became "negative" after JIT reversed the $2,074.00 payment.

29. Subsequently, Jones approached Presciano to ask why her paycheck had been reversed.

30. Presciano told Jones that the $2,074.00 was an error and demanded that Jones pay JIT back.

31. Jones told Presciano she could not pay the money back because she had spent most of it.

32. Jones complained to Presciano that Jones believed the reversal of the $2,074.00 payment meant that Jones had not paid at all.

33. Jones told Presciano "its illegal not to pay people" and asked, "when am I going to get my money?" ("Pay Complaints").

34. Jones' Pay Complaints constituted protected activity under the FLSA and the OMWFSA.

35. Presciano became angry and irate with Jones after Jones made her protected complaints and terminated Jones immediately.

36. As part of Defendants termination of Jones, they ended her work assignment with Dillen.

37. Defendants' termination of Jones was unlawful, in that it was in direct response to Jones' complaints about her reasonable belief that Defendants had violated the FLSA and the OMWFSA by reversing the $2,074.00 payment and not paying Jones for all hours worked during that work week.

4

38. Subsequently, Jones followed up with Dillen about the possibility of becoming "permanently" employed.

39. Jones spoke with Chris about the possibility of becoming employed by Dillen.

40. Chris advised Jones that Dillen could not hire her because JIT refused to allow Dillen to do so.

41. Chris advised Jones that Dillen could not hire her because Defendants were alleging that she had been terminated for "cursing at a manager" in connection with her Pay Complaint.

42. Jones had not cursed at a manager at JIT.

43. Even if Jones had cursed in connection with her Pay Complaint, doing so would not have violated any practice of JIT, as JIT employees use profanity on a regular basis at JIT without consequence.

44. As a result of Defendants' unlawful conduct, Jones not only lost her job with JIT; she also was also blocked from an employment opportunity with Dillen.

45. As a result of Defendants' unlawful conduct, Jones has suffered and continues to suffer damages.

## COUNT I: UNLAWFUL RETALIATION IN VIOLATION OF 29 U.S.C. § 215(A)(3).

46. Jones restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

47. Pursuant to the FLSA, 29 C.F.R. § 215(a)(3), it is a violation for any employer to, "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act, or as testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee."

48.  Jones engaged in protected activity when she made the Pay Complaint.

49.  Defendants took adverse action against Jones in response to her Pay Complaint by terminating her employment.

50.  Defendants took adverse action against Jones in response to her Pay Complaint by ending her assignment with Dillen.

51.  Defendants took adverse action against Jones by preventing or blocking Jones from becoming employed with Dillen.

52.  There is a casual link between the adverse actions and the employment actions herein, including the termination of Jones.

53.  As a result of Defendants acts, Jones has suffered and will continue to suffer damages.

54.  Defendants are liable to Jones for liquidated damages and all reasonable attorneys incurred in pursuing this action.

### COUNT V: RETALIATION BASED ON PROTECTED WAGE COMPLAINTS IN VIOLATION OF ARTICLE II, SECTION 34A OF THE OHIO CONSTITUTION.

55.  Jones restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

56.  Pursuant to Article II, Section 34a of the Ohio Constitution, "[n]o employer shall discharge or in any other manner discriminate or retaliate against an employee for exercising any right under this section or any law or regulation implementing its provisions or against any person for providing assistance to an employee or information regarding the same."

57.  Jones engaged in protected activity when she made the Pay Complaints.

58.  Defendants took adverse action against Jones in response to her Pay Complaint by terminating her employment.

59. Defendants took adverse action against Jones in response to her Pay Complaint by ending her assignment with Dillen.

60. Defendants took adverse action against Jones by preventing or blocking Jones from becoming employed with Dillen.

61. There is a casual link between the adverse actions and the employment actions herein, including the termination of Jones.

62. As a result of Defendants' acts, Jones has suffered and will continue to suffer damages.

63. Pursuant to O.R.C § 4111.14(J), Jones is entitled to an amount set by the court sufficient to compensate the Jones and deter future violations, but not less than one hundred fifty dollars for each day that the violation continued.

64. Defendants are liable to Jones for liquidated damages and all reasonable attorneys incurred in pursuing this action.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Yaseka Jones requests judgment against each Defendant and for an Order:

a. Awarding Jones damages, including actual, general, special, incidental, statutory, treble, liquidated, and consequential in an amount to be determined at trial;

b. Awarding Jones all remedies provided for under O.R.C § 4111.14(J), sufficient to compensate the Jones and deter future violations, but not less than one hundred fifty dollars for each day since Jone's unlawful termination;

c. Awarding Jones pre-judgment and post-judgment interest as provided by law;

d. Awarding Jones her reasonable attorneys' fees and costs; and

e. Awarding such other and further relief that this Court deems appropriate.

Respectfully submitted,

/s/ Chris P. Wido
Chris P. Wido (0090441)
**THE SPITZ LAW FIRM, LLC**
25200 Chagrin Blvd., Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax:     (216) 291-5744
Email: chris.wido@spitzlawfirm.com

*Attorney for Plaintiff Yaseka Jones.*

## JURY DEMAND

Plaintiff Yaseka Jones demands a trial by jury by the maximum number of jurors permitted.

/s/ Chris P. Wido
Chris P. Wido (0090441)
**THE SPITZ LAW FIRM, LLC**